IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARIAN CLAIRE STEELE, | § | |
| Plaintiff, | § § § | |
| V. | § | CIVIL ACTION NO. H-17-3539 |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § | |

### **MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court[1] in this social security appeal are the parties' cross Motions for Summary Judgment (Document Nos. 13 & 15). Having considered the motions, each side's briefing and response (Document Nos. 14 & 16), the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment (Document No. 15) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 13) is DENIED, and this proceeding is REMANDED to the Commissioner for further proceedings.

---

[1] On April 17, 2018, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 8.

1

I.      Introduction

Plaintiff Marian Claire Steele ("Steele") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Insurance benefits ("SSI"). In this appeal Steele contends that the Administrative Law Judge's ruling that she "could perform full-time work is not supported by substantial evidence" and that the ALJ: (1) incorrectly assessed the opinions of a consultative examiner; (2) improperly discounted her complaints of "severe and debilitating psychiatric impairments" by reference to her "rather extensive and uninhibited lifestyle and travel adventures," (3) failed to fully discuss the applicable listing for lupus,, Listing 14.02; (4) erred in his consideration of her migraines as not "severe," and (5) erred in his reference to her marijuana use. The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's RFC's determination and his disability determination at step five, and that the decision comports with applicable law.

II.     Administrative Proceedings

In October 2013, while she was living in Colorado, Steele applied for DIB and SSI, claiming that she has been unable to work since October 31, 2010, as a result of lupus, chronic migraines, edema, depression, chronic pain, a manic disorder, bipolar disorder, hypothyroidism and chronic joint pain (Tr. 278-284; 308). The Social Security Administration denied the applications at the initial and reconsideration stages. After that, Steele requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, Gary Suttles, held a hearing on March 16,

2016, at which Steele's claims were considered *de novo*. (Tr. 38-132). On April 8, 2016, the ALJ issued his decision finding Steele not disabled. (Tr. 14-31).

Steele sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On September 8, 2017, the Appeals Council found no basis for review (Tr. 1-3), and the ALJ's decision thus became final.

Steele filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment, each of which has been fully briefed. The appeal is now ripe for ruling.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by

3

substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

IV. **Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v.*

5

*Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Steele had not engaged in substantial gainful activity since October 31, 2010, her alleged onset date. At step two, the ALJ found that Steele had the following severe impairments: lupus, degenerative joint disease, bipolar disorder, drug abuse (daily marijuana), depression and anxiety, but that her gastroesophageal reflux disease, migraine headaches and hypothyroidism were non-severe impairments. At step three, the ALJ concluded that Steele did not have an impairment or combination of impairments that met or medically equaled a listed impairment, including Listings 12.04 and 12.06. The ALJ then, prior to consideration of steps four and five, determined that Steele had the residual functional capacity ("RFC") to perform a restricted range of sedentary work insofar as she was "able to lift and carry 10 pounds occasionally and 5 pounds frequently, stand and walk about 4 of 8 hours each and sit 6 of 8 hours for a full 8-hour day[] . . . has generally unlimited abilities to push and pull and gross and fine dexterity, except for occasional pushing with the lower extremities bilaterally. Although the claimant is able to occasionally climb stairs, she cannot climb ladders, ropes or scaffolds and cannot run. She is able to occasionally bend, stoop, crouch, crawl, balance, twist but not squat [ ], [s]he can tolerate occasional exposure to excessive heat or humidity, dangerous machinery, uneven surfaces, and

unprotected heights. Mentally the claimant is limited to simple instructions and tasks, is able to respond and adapt to workplace changes and supervision although only within an occasional public/employee contact setting." At step four, using that RFC, and based on the testimony of a vocational expert, the ALJ determined that Steele could not perform her past work as a service manager or a mechanic. At step five, again using that RFC, and relying on the testimony of a vocational expert, the ALJ concluded that there were jobs in significant numbers in the regional and national economy that Steele could perform, including document preparer, charge account clerk, and assembler of small parts, and that she was, therefore, not disabled.

In this appeal, Steele generally argues that the ALJ's determination that she could maintain full time employment is not supported by substantial evidence. She also argues, in support of that global substantial evidence issue, that the ALJ: (1) erred in his consideration of the opinions of Dr. Robert G. Harper, who conducted a consultative psychological evaluation of Steele in October 2014, and who completed a mental impairment questionnaire; (2) erred in his consideration of the severity of her migraines; (3) erred by failing to consider whether she met Listing 14.02; (4) erred in his consideration of her subjective complaints; and (5) erred in his reference to, and characterization of, her marijuana use.

## V. Discussion

Steele's substantial evidence argument(s) start at step two, and then progress through step three and the ALJ's subsequent RFC assessment.

Starting at step two, Steele maintains that the ALJ erred in his assessment of her migraines as non-severe. The ALJ's assessment in that regard is as follows:

7

> On September 25, 2013, T. Drake McDonald, M.D., examined the claimant. Dr. McDonald reported that the claimant had migraine headaches and taking Imitrex to control them. If she takes the injection quickly she can prevent a full blown migraine headache onset. On May 7, 2014, an MRI scan of the claimant's brain showed bilateral spherical white matter foci of high T2 signal intensity. The differential considerations included a sequelae of a migraine or cerebral vasculitis. However, there is no evidence that the claimant's headaches have imposed more than a slight functional limitation on the claimant for at least 12 months.

(Tr. 17). This severity assessment at step two is not supported by substantial evidence. The medical record is *replete* with Steele's complaints of migraines, medical providers' diagnoses of migraines, and Steele's treatment with various medications – all of which occurred over more than a twelve month period of time. The record also contains Steele's description of her migraines, as well as the various medications she has tried to alleviate them. While Steele did testify at the administrative hearing in March of 2016 that she had migraines a couple of times a month and can sometimes stave them off with a sumatriptan injection (Tr. 83-86), the medical evidence in the record shows that that was not always the case. Throughout 2013, Steele suffered from migraines that were characterized as severe and chronic (Tr. 538, 556, 567, 573, 579, 585, 723) and which ultimately affected Steele's ability to attend college classes. (Tr. 330). While it is true Steele's migraines did improve, in 2014, with Botox and Imitrex (Tr. 342), for at least a twelve month period of time Steele's migraines had more than a slight functional limitation on Steele. The ALJ's severity assessment at step two is, therefore, not supported by substantial evidence.

With respect to Steele's complaints at step three, again she is correct that the ALJ should have, but failed to consider, whether she met Listing 14.02, the listing for "systemic lupus erythematosus." Nowhere did the ALJ mention or consider this listing; instead, the medical opinion evidence in the record that was pertinent to Listing 14.02 was discounted and rejected by the ALJ

in his subsequent, post-step three, RFC assessment.

> Listing 14.02 provides for presumptive disability for those with lupus where there is:
>
> A. Involvement of two or more organs/body systems, with:
> 1. One of the organs/body systems involved to at least a moderate degree of severity; and
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
> or
> B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation in activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Here, the record contains evidence that Steele was diagnosed with lupus, and opinion evidence, from Dr. Robert Harper, a psychologist who conducted a consultative psychological evaluation of Steele, opined that Steele had "marked" limitations in activities of daily living, "marked" limitation in maintaining social functioning, and "marked" limitations in maintaining concentration, persistence and pace. (Tr. 918-923). In addition, the record contains some evidence that Steele experiences significant fatigue, as well as some symptoms that could be considered "malaise." That record evidence necessitated a consideration by the ALJ of Listing 14.02. The ALJ's failure to specifically mention and consider Listing 14.02 was error at step three. *Joyce v. Berryhill*, No. 4:16-CV-00689-Y-BL, 2017 WL 4216988, at *5 (N.D. Tex. Aug. 31, 2017) (, *report and recommendation adopted*, No. 4:16-CV-689-Y, 2017 WL 4167514 (N.D. Tex. Sept. 20, 2017).

In addition to those errors at step two and step three, Steele is again correct that the ALJ overstated and mischaracterized her daily activities, her "lifestyle," and her marijuana use as a basis for rejecting her subjective complaints and discounting her psychiatric impairments. In the ALJ's

9

decision, it was determined that Steele's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record" and that Steele has:

> extensive activities of daily living. She spends time with friends. The claimant is entertaining and engaging and has lived an interesting lifestyle, She drove to Colorado in December 2014 and January 2016, in order to see friends and obtain drugs. She has her own Harley Davidson motorcycle, but says she hasn't ridden it in "years". The claimant testified that she watches the BBC and the Drudge report. She uses Facebook and email. Additionally, she reads self-help books. I find the claimant much more intelligent than the mental records would indicate, although I still placed her at the simple tasks and instruction level of mental function.
>
> When the claimant filed her application, she reported that she was able to do laundry, vacuuming, and cleaning. The claimant reported that she was able to drive. She went shopping for groceries. The claimant reported that she was able to pay bills, count change, handle a savings account, and use a checkbook. The Social Security Administration will consider activities if daily living in evaluating a claimant's symptoms.
>
> The claimant has used marijuana daily since January 2015, when she legally purchased a stash in Colorado to last her through June 2015. The claimant stated that she used marijuana for medicinal reasons, however there is no formal prescription in the medical record. I find her daily use coupled with her mental medications would adversely impact her concentration and mental function as they are contraindicated substances. I find her drug use is not in remission, however, it does not constitute a "material" factor per the regulation as to her disability.

(Tr. 23-24). This stated basis for discounting both Steele's subjective symptoms and the limitations posed by her mental impairments lacks support in the record evidence. First, Steele's testimony at the administrative hearing is contrary to the ALJ's findings about her daily activities, her lifestyle and her marijuana use. Steele's testimony at the administrative hearing could support a conclusion that she lived an interesting lifestyle before she was diagnosed with lupus in 2012, but not thereafter. Steele testified that it took her two days to drive from Corpus Christi to Houston for the administrative hearing; that she may talk to her friends on the phone but that she doesn't like leaving

the house; that she infrequently watches BBC and infrequently uses Facebook; that she seldom uses email; that she has books but does not read much anymore; and that she takes a CBD "tincture" for pain almost every day. (Tr. 100-112).[2] Steele's testimony, along with the contents of a "Function Report" Steele completed when she filed her DIB and SSI applications (Tr. 1108-1166), does not support the ALJ's characterization of Steele's daily activities, her lifestyle, or her marijuana use.[3]

As for Steele's complaints about the ALJ's rejection of Dr. Harper's opinions following his consultative psychological evaluation of her,[4] that issue need not be reached in this appeal because the ALJ's errors at step two, step three, and in assessing Steele's subjective complaints. are enough to warrant a remand for further proceedings. It may be that Steele, as of the date of her administrative hearing in March 2016, had the physical and mental ability to engage in the type of gainful activity identified by the ALJ in his decision. But, prior to that date, particularly in 2013 and 2014, the ALJ's decision that Steele could engage in full-time gainful employment is not supported by substantial evidence, with the ALJ's errors at step two and step three being particularly problematic. As such, this matter should be remanded to Commissioner for further proceedings and

---

[2] At the administrative hearing, Steele explained to the ALJ the CBD tincture having "the cannabinoids but not the THC, and that's for pain." (Tr. 112).

[3] The ALJ also commented that Steele was "only taking Plaquenil" for lupus, which is a non-narcotic medication." Although Steele does take Plaquenil for her lupus, she take various other medications for her related pain and joint problems, including Tramadol (for pain) and Celebrex (an anti-inflammatory), as well as the CBD tincture for pain.

[4] The ALJ discounted Dr. Harper's opinion on the basis that it was "simply unsupported by other objective clinical findings and [was] inconsistent with the claimant's rather extensive and uninhibited lifestyle and travel adventures." (Tr. 27). That assessment of Dr. Harper's opinion is tied up with the ALJ's mischaracterization of Steele's "lifestyle," her daily activities, and her marijuana use. As for the ALJ's mention of Steele's "travel adventures," the record reveals that any significant travel ended for Steele in 2012, when she returned early from a trip to Australia with her parents because of her health issues. (Tr. 44-45).

re-evaluation at step two and step three, including, if appropriate, a determination of whether Steele was disabled (a continuous 12 month period) during any time between her alleged onset the date and the date of any further proceedings.

## VI. Conclusion and Order

Based on the foregoing, and the conclusion that the ALJ's decision is not supported by substantial evidence insofar as he erred, as set forth above, at step two, step three, and in evaluating Steele's subjective complaints, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 15) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 13) is DENIED, and this matter is REMANDED to the Commissioner pursuant to sentence four, 42 U.S.C. 405g, for further proceedings consistent with this Memorandum and Order.

Signed at Houston, Texas, this 20th day of March, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE